UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JILLIAN BECK, individually and
as Parent and Next Friend of
A.B., a Minor, and
ANDREW R. BECK, I, individually,

      Plaintiffs,

v.                                                                                      CV 14-67 KG/WPL

ISAIAH BAKER, in his individual
capacity, and
JOSEPH CAMPA, in his individual
capacity,

      Defendants.

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR A FINDING OF SPOLIATION AND FOR SANCTIONS AND REOPENING LIMITED DISCOVERY

      This matter is before the Court on Plaintiffs' Motion for a Finding of Spoliation and for Sanctions, filed on January 13, 2015. (Doc. 60). Defendants filed a response on February 2, 2015. (Doc. 67). On March 30, 2015, Defendants filed a Supplement to Defendants' Response to Plaintiffs' Motion for a Finding of Spoliation and for Sanctions. (Doc. 83). Plaintiffs filed a Reply to Supplement on April 24, 2015. (Doc. 84). Upon review of the briefing, the record, and applicable law, the Court will deny the motion and reopen limited discovery.

I.   *Background*

      At approximately 10:00 p.m. on January 5, 2013, Las Cruces Police Department ("LCPD") Officers Joseph Campa and Manuel Chavez were dispatched to Plaintiffs' neighborhood. The call related to a dispute between Plaintiffs and their neighbor over Plaintiffs'

barking dog and the neighbor's use of an air horn to silence the dog.  The neighbor complained that Plaintiffs left a harassing note on his door and onions and salmon on his car.  Plaintiff Jillian Beck ("Mrs. Beck") admitted to leaving the note and the food on her neighbor's car.  The officers warned Mrs. Beck and left the neighborhood.

The neighbor later called to complain that Mrs. Beck left another harassing note.  Officers Campa and Chavez, as well as Officer Isaiah Baker responded to this second complaint.  The parties dispute the facts, demeanors of the participants, and Mrs. Beck's level of intoxication.  However, the parties agree that Officer Baker arrested Mrs. Beck.  In the process, Mrs. Beck landed on her face in rock landscaping, broke her nose, and injured her wrist.  Andrew Beck ("Mr. Beck") and Mrs. Beck's child, A.B., witnessed Mrs. Beck's arrest and injury.  Officer Campa arrested Mr. Beck for resisting and obstructing an officer on the basis that Mr. Beck refused to obey Officer Campa's commands to stay back from Mrs. Beck.

During the incident, Officers Baker and Chavez used the infrared targeting lights on their X-26 Tasers, but neither deployed an electrical discharge.  (Doc. 67) at 3; (Doc. 67) Ex. 1 at ¶ 9.  This type of Taser has a camera connected to the battery, and any video recording is saved on the battery.  (Doc. 67) at 3; (Doc. 67) Ex. 1 at ¶ 7.  The camera is activated when the officer uses the infrared targeting light after a two- or three-second delay.  (Doc. 67) at 3; (Doc. 67) Ex. 1 ¶ 8.  Officer Campa never turned on the infrared targeting light on his Taser or activated the Taser on the day of the incident.  (Doc. 67) at 3; (Doc. 67) Ex. 1 at ¶ 10.

According to LCPD procedures, specific Tasers are assigned to officers.  Prior to May 2013, when LCPD Officers switched out their batteries to be recharged, they received a new Taser battery not assigned to a particular officer.  (Doc. 67) at 4.  LCPD policy provides that only those videos involving a Taser's electrical discharge on a person are downloaded for

Professional Standards Unit or Blue Team (use of force) reports.  (Doc. 67) at 4; (Doc. 67) Ex. 1 at ¶ 12.

Plaintiffs bring 42 U.S.C. § 1983 Fourth Amendment excessive force and unreasonable seizure claims and a First Amendment retaliation claim against Defendant Officers Baker and Chavez, as well as state tort claims for battery, false imprisonment, and negligent infliction of emotional distress.  (Doc. 1).  In the present motion, Plaintiffs seek a finding of spoliation as to Taser videos of the incident and sanctions therefrom.

*II. Legal Standards for Spoliation*

When evidence is lost or destroyed, a court may order spoliation sanctions "where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (citing *103 Inv'rs I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006)).

A court examines five factors before choosing a sanction to impose, which may include dismissal: "(1) the degree of actual prejudice to the [Plaintiffs]; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions."  *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1179 (10th Cir. 2009) (citing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992)).

A demonstration of bad-faith destruction of relevant evidence generally "gives rise to an inference that production of the [evidence] would have been unfavorable to the party responsible for its destruction."  *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) (internal citations omitted).  Such an adverse inference "is a powerful sanction as it brands one party as a

3

bad actor and necessarily opens the door to a certain degree of speculation by the jury." *Henning v. Union Pac. R. Co.*, 530 F.3d 1206, 1219-20 (10th Cir. 2008) (internal quotations omitted). In the absence of a showing of bad faith, such as in the case of mere negligence, an adverse inference is unsupportable. *Aramburu*, 112 F.3d at 1407; *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015). In such a situation, however, a court may only impose lesser sanctions. *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) (citing *Henning*, 530 F.3d at 1220); *see 103 Inv'rs I, L.P.*, 470 F.3d at 989 ("[C]ourts have not generally imposed a . . . requirement of bad faith when considering other sanctions for the spoliation of evidence.").

III. Discussion

 1. *Parties' Arguments*

  Plaintiffs allege that, during the incident, Officers Baker and Chavez pointed the infrared targeting lights on their Tasers at the Plaintiffs and neighbors on the scene. Plaintiffs contend that these Tasers were equipped with cameras that captured video recordings of the incident. On February 21, 2013, Plaintiffs sent two letters to LCPD: one letter was a general request to LCPD Administrative Services Manager Kim Peralta and Lt. Kerry Clements of the Criminal Investigations Section to preserve evidence, and the second letter addressed to Conducted Electrical Weapon ("CEW") Control Officer Sergeant Robert Benavidez, specifically requested that Taser videos be preserved. (Doc. 60) Exs. 1-2. Plaintiffs sent a tort claims notice letter to Defendants on March 21, 2013. (Doc. 60). During discovery for the present civil case, Plaintiffs requested production of the Taser videos, but Defendants responded that any evidence was not preserved, as the video recorders were switched between officers pursuant to department practice and recorded over. (Doc. 60) Ex. 3.

Plaintiffs argue that Defendants had a duty to preserve the video evidence because litigation was reasonably foreseeable.  Plaintiffs also argue that videos of parts of the incident are relevant to the present case, as the videos would confirm the following claims by Plaintiffs:

1) The neighbor witnesses testifying on Plaintiffs' behalf were in a good position to see the incident;

2) Mr. Beck was not so close to the location of Mrs. Beck's arrest that he could be accused of interfering with the arrest;

3) Defendants were overusing their force against citizens that night, including by pointing their Tasers at neighbors standing in their own yard who were not interfering with the officers; and

4) Officer Baker, who was on top of Mrs. Beck when he pointed his Taser, was in full control of Mrs. Beck, making the extent of his force excessive.

Plaintiffs request that the Court order sanctions in the form of a finding that Defendants destroyed relevant evidence, an instruction to the jury that Defendants destroyed relevant video evidence that would have been favorable to Plaintiffs' case, and exclusion of any evidence from the Defendants about the location of Plaintiffs' witnesses or of Mr. Beck.  Plaintiffs maintain that the destruction of evidence supportive of witness claims is very prejudicial.  They also contend that Defendants are highly culpable for the destruction of the evidence because they knew litigation was occurring, yet acted in a way that would certainly result in destruction of the evidence.

Defendants argue that they did not engage in a willful act of spoliation; rather, any loss of video was an act of negligence based on LCPD's standard Taser maintenance and recordkeeping policy and an unawareness of the evidentiary value of the data.  They maintain that Sergeant

Benavidez does not recall seeing a letter dated February 21, 2013, asking him to preserve any Taser videos.  (Doc. 67) at 5; (Doc. 67) Ex. 1 ¶ 16.  In January 2015, during a second search for the Taser videos following a search in October and November 2014, Sergeant Benavidez found the two Taser batteries used by Officers Baker and Chavez on the date of the incident, but neither Taser battery contained videos from the incident.  (Doc. 83) Ex. 1 at ¶¶ 6-7.

On March 12, 2015, following the January 30, 2015, close of discovery, Sergeant Benavidez provided an electronic copy of the files found on Officer Baker's Taser battery, and he signed a sworn affidavit on March 26, 2015, describing the search for the Taser videos.  (Doc. 56); (Doc. 83) Ex. 1.  Sergeant Benavidez explained that the Taser battery used by Officer Baker on January 5, 2013, had been malfunctioning.  (Doc. 83) Ex. 1 at ¶ 10.  Sergeant Benavidez exchanged that battery for a different battery and stored the original battery among broken batteries.  *Id.*  Sergeant Benavidez did not know the specific reason why the battery failed to record.  *Id.* at ¶ 12.  As to Officer Chavez's Taser battery, Sergeant Benavidez stated, "I do not know if the video did not record because of a disconnection between the taser battery and the taser itself, or the fact that the Officer Manuel Chavez did not paint his target long enough to record."  *Id.* at ¶ 15.

Defendants also maintain that any lost information would not show what Plaintiffs claim.  For example, Defendants point out that, while Mr. Beck testified at his deposition that Mrs. Beck put her hands on him, witness Marie Gaytan claimed in her deposition to have never seen Mrs. Beck touch Mr. Beck, despite also claiming that she witnessed the entire event.  (*See* Doc. 67) Ex. 2 at 36:12-19; (Doc. 67) Ex. 3 at 53:15-17.  Therefore, Defendants argue, any Taser videos would fail to prove as a general matter that the witnesses were in a good position to see what occurred, where Gaytan's deposition already demonstrates that she did not see everything that

happened.  Second, Defendants assert that the proximity of Mr. Beck to Mrs. Beck is not as relevant as Mr. Beck's deposition statements that he attempted to help Mrs. Beck during her arrest and that he received commands by Officer Baker to stay away.  (*See* Doc. 67) at 8; (Doc. 67) Ex. 2 at 38:1-18.  Third, Defendants point out that any video would show that pointing the Tasers was not excessive, as witness Monique Gaytan admitted that her husband approached the officers while cursing at them.  (*See* Doc. 67) at 8; (Doc. 67) Ex. 4 at 59:14-25; 60:1-8.  Finally, Defendants assert that most of Mrs. Beck's claims of excessive force arise from Officer Baker's actions in taking her down to the ground, these actions took place before Officer Baker pointed his Taser, and no witnesses testified that Officer Baker pointed his Taser at Mrs. Beck while she was on the ground.  Therefore, Defendants argue, Mrs. Beck's and Officer Baker's actions would not have been recorded on the Taser battery.

Defendants point out that the civil action was not filed until about a year after the incident, prior to which an internal affairs investigation and criminal litigation took place.  They assert that Defendants did not ascertain the relevance of any Taser videos at the time of the earlier investigations; indeed, the videos were not requested during the criminal litigation, and no one viewed the videos.  Any videos were lost among approximately 150 Taser batteries in current use or sixty Taser batteries that were destroyed or recycled.  Further, Defendants argue that spoliation did not occur because the videos were only seconds long and not prejudicial to Plaintiffs' case.[1]  The recordings would have run only as long as the Officers used the infrared targeting light.  Defendants point out that they disclosed an audio recording that is nearly an hour long, presumably longer than either missing Taser video.  Defendants contend that an adverse

---

[1] Defendants note that there is no direct testimony as to the duration of the video tapes, but they contend that a duration longer than a few seconds would require that the Officers use the infrared targeting lights for more than the moments necessary to control the scene.  (Doc. 67) at 12 n.5.

inference instruction and limiting testimony would be too harsh of a penalty. Defendants request that, if the Court finds spoliation, that it impose the lesser sanction of a monetary sanction.

Plaintiffs reply that Sergeant Benavidez provided Plaintiffs with inconsistent video and documentary evidence regarding the Officers' Taser batteries. (Doc. 84) at 2. Plaintiffs note that Defendants have disclosed over 200 videos from other Taser incidents, after the close of discovery. Dozens of the videos are dated later than the date of the purported download. (*Id.*) Further, Plaintiffs assert that Defendants have failed to explain how they know that they have identified the correct batteries in use at the time of the incident. Plaintiffs complain that, now that discovery is closed, Plaintiffs are unable to investigate the missing videos. Plaintiffs contend that, had Defendants provided the batteries and video evidence while discovery was still open, Plaintiffs would have deposed Sergeant Benavidez regarding how the batteries were located and what happened to the lost videos; deposed all witnesses about how long the Tasers were used during the encounter with Plaintiffs; and deposed officers regarding how their batteries were switched and whether anything might have caused their Tasers to malfunction on the day of the incident. Plaintiffs argue that they have been prejudiced as a result of their inability to pursue full discovery based on Defendants' late disclosure of the batteries.

2. *Analysis*

The Court applies the facts of the present case to the two-pronged test for imposing spoliation sanctions. *See Burlington N.*, 505 F.3d at 1032. With respect to the first prong, whether a party "knew, or should have known, that litigation was imminent," Defendants had actual notice of impending litigation via Plaintiffs' February 21, 2013, letter to Peralta and Clements. *Id.*; (Doc. 60) Ex. 1. Defendants have not contested that they received this letter.

As to the second prong, the Court concludes that it is unclear whether Plaintiffs experienced prejudice by destruction of Taser video evidence. *See Burlington N.*, 505 F.3d at 1032. Indeed, it is unclear whether Officer Baker and Officer Chavez's Taser batteries ever recorded any video evidence on the day of the incident. If the Court were able to find prejudice by way of destruction of evidence, the Court would then have to assess the degree of actual prejudice to the Plaintiffs and the level of culpability of the Defendants, among other factors. *See Garcia*, 569 F.3d at 1179. Sergeant Benavidez's inability to recall receiving a letter to preserve Taser video evidence may indicate mere negligence, as argued by Defendants, but the Court will not decide culpability at this juncture.

Instead, the Court agrees with Plaintiffs that they were precluded from completing the discovery they would have pursued had Sergeant Benavidez found and disclosed the relevant Taser batteries prior to the close of discovery. Plaintiffs' assertion that they would have conducted further discovery by deposition as to the Taser batteries and use of the Tasers on the day of the incident is reasonable considering the disclosed information. The Court finds that limited discovery on these matters could shed significant light on whether the loss of Taser video evidence—if it ever existed—caused prejudice to Plaintiffs. Accordingly, the Court will reopen limited discovery through **October 31, 2016**, for the purpose of allowing Plaintiffs to conduct the following limited depositions:

1) Sergeant Benavidez, to question him regarding how he located the batteries, whether videos existed at any time, and what happened to the missing videos, if they existed;
2) all available eyewitnesses, as to the time, duration, and locations Defendants pointed their Taser infrared targeting lights; and

    3) Defendants, regarding how they switched out their batteries and whether anything happened to their Tasers on January 5, 2013, that might have caused the video recorders to malfunction.

Should Plaintiffs determine, based on this limited discovery, that video evidence existed and that they were prejudiced by the destruction of evidence, Plaintiffs may file a new motion for a finding of spoliation and for sanctions.

*IV. Conclusion*

Based on the foregoing, the Court DENIES Plaintiffs' Motion for a Finding of Spoliation and for Sanctions. (Doc. 60). The Court reopens limited discovery in accordance with this Memorandum Opinion and Order though **October 31, 2016**.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE