UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JILLIAN BECK, individually and
as Parent and Next Friend of
A.B., a Minor, and
ANDREW R. BECK, I, individually,

       Plaintiffs,

v.                                                                                            CV 14-67 KG/WPL

ISAIAH BAKER, in his individual
capacity, and
JOSEPH CAMPA, in his individual
capacity,

       Defendants.

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Las Cruces Police Department ("LCPD") Officers Isaiah Baker and Joseph Campa's Motion for Summary Judgment Based on Qualified Immunity and Governmental Immunity, filed on February 13, 2015. (Docs. 74, 76). Plaintiffs Jillian Beck, individually and as parent and next friend of A.B., a minor, and Jillian Beck's husband, Andrew R. Beck, I, filed a response on February 27, 2015. (Doc. 78). Defendants filed a reply on March 13, 2015. (Doc. 80).

Plaintiff Jillian Beck ("Mrs. Beck") brings 42 U.S.C. § 1983 Fourth Amendment excessive force and unreasonable seizure claims, a First Amendment retaliation claim, and state tort claims for battery and false imprisonment against Officer Baker. (Doc. 1). Mrs. Beck also brings a state tort claim for negligent infliction of emotional distress against Officer Baker on behalf of her minor son, Plaintiff A.B. ("A.B."). (*Id.*) Plaintiff Andrew R. Beck, I ("Mr. Beck")

brings a 42 U.S.C. § 1983 unreasonable seizure claim against Officer Campa.  (*Id.*)  Defendants seek summary judgment on all claims based on qualified immunity and governmental immunity.

After reviewing the briefing, the record, and applicable law, the Court will grant summary judgment as to the negligent infliction of emotional distress claim and deny summary judgment as to all other claims.

A.  *Factual Background*

  1.  *Plaintiffs' Version*

The Court construes the factual record and reasonable inferences therefrom in the light most favorable to the Becks.  *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

At approximately 9:00 p.m. on January 5, 2013, Officer Campa and fellow LCPD Officer Chavez were dispatched to Plaintiffs' neighborhood in response to a complaint that Plaintiffs had thrown food at a neighbor's car.[1]  (Doc. 1) at ¶¶ 15-16.  Plaintiffs were involved in an ongoing dispute with said neighbor over his hostile behavior toward barking dogs in the neighborhood.  (*Id.*)  When the officers arrived on the scene, Mrs. Beck approached them to follow up on a complaint she had made a few weeks earlier about the neighbor throwing rocks at neighborhood dogs, but the officers made it clear they were not interested in hearing her complaints.  (Doc. 78) at 1.  After investigating the food throwing allegations and determining the neighbor's car had not been damaged, the officers left without issuing any warnings or citations.  (Doc. 1) at ¶ 16.

Officers Campa and Chavez returned to Plaintiffs' neighborhood around 11:00 p.m. that same evening, this time with Officer Isaiah Baker, in response to a second complaint from the neighbor about a note left near his front door.  (*Id.*) at ¶¶ 17-18.  Mrs. Beck, frustrated by the

---

[1] In her deposition, Mrs. Beck admitted to placing lox (salmon) on her neighbor's windshield and throwing onions at his car.  (Doc. 76) Ex. D at 37:18-38:13.

officers' failure to address her concerns, again attempted to explain to Officer Baker that she was upset about the neighbor throwing rocks and blowing an air horn at neighborhood dogs in the middle of the night.  (*Id.*) at ¶ 19.  While standing approximately three-and-a-half feet from Officer Baker, Mrs. Beck proceeded to curse at him with a raised voice.  (Doc. 78) Ex. 6 at 35.  Mrs. Beck also admits that she consumed alcohol during the evening.  (Doc. 78) Ex. 10 at 51.

      Officer Baker commanded Mrs. Beck to step back.  (Doc. 78) Ex. 8 at 35-36.  Mr. Beck told his wife to "forget it . . . let's just leave", to which Mrs. Beck responded, "Baby I got this, and I'm going to keep talking to these guys."  (*Id.*) at 36.  According to Mr. Beck, his wife was not angry when she addressed him, and she only touched him with her fingertips "how you would touch a loved one."  (*Id.*)  As Mrs. Beck started to walk away from Officer Baker, Officer Baker grabbed her arm and threw her to the ground, slamming her face first into the rock landscaping.  (Doc. 78) at 2.  Mrs. Beck suffered a fractured arm and nose during the arrest.  (Doc. 1) at ¶¶ 24, 32.

      Officer Chavez stated that Mrs. Beck kicked him as he was assisting Officer Baker with the arrest.  (*Id.*) at ¶ 35.  However, Plaintiffs claim Officer Chavez's allegation is fabricated to support the officers' actions.  (*Id.*)  Witnesses also deny that Mrs. Beck showed any signs of aggression toward the officers. (Doc. 78) 6-8.  After handcuffing Mrs. Beck, Officer Baker then purposely slammed her head into the frame of the police car as he put her inside.  (Doc. 78) at 2.

      Mr. Beck witnessed the events and, seeing his wife's bleeding face, attempted to move toward Mrs. Beck to help her; he was subsequently arrested.  (Doc. 78) at 2; Ex. 14 at 38.  The Becks' five-year-old son, A.B., was also outside in the yard and witnessed the incident.  (Doc. 1) at ¶ 20; (Doc. 78) at 2.  He ran crying to the next-door neighbor's house stating that the police were hurting his mother.  (Doc. 1) at ¶ 26.

2. *Defendants' Version*

While the Court construes the factual record in the light most favorable to the Becks, the Court recognizes the differences between Plaintiffs' version of events and Defendants' for the purpose of assessing whether genuine issues of material fact exist. Defendants' version of the facts corresponds with that previously discussed except as outlined in this subsection.

Defendants disagree with Plaintiffs that during Officers Campa and Chavez's first visit to Plaintiffs' neighborhood on January 5, 2013, the officers issued no warnings. Rather, Defendants state that Officer Chavez told Mrs. Beck to leave the neighbor and his property alone and warned that she could be cited if she damaged the neighbor's vehicle. (Doc. 76) at ¶ 5. Defendants also claim that Officer Chavez believed that Mrs. Beck was intoxicated because she staggered toward him and her breath smelled of alcohol. (*Id.*) at 2.

When the officers arrived in Plaintiffs' neighborhood the second time that evening, they perceived the Becks' child to be alone and unattended in the street. (*Id.*) at 3, ¶ 10. Defendants maintain that upon confronting Mr. Beck about the child, he responded in an irritated manner and appeared to be intoxicated as well. (*Id.*) at 3, ¶ 11. Mrs. Beck approached Officer Baker "angrily" and stood "close" to him. (*Id.*) at 3, ¶¶ 12-13. She was loud, belligerent, and more intoxicated than an hour earlier. (*Id.*) at 3, ¶¶ 13-14. Officer Baker felt threatened by Mrs. Beck's actions, demeanor, and proximity. (*Id.*) at ¶ 15. Defendants contend that Officer Baker gave Mrs. Beck numerous commands to calm down and step back. (*Id.*) at 3, ¶ 16.

According to Defendants, Mr. Beck attempted to intervene and told Mrs. Beck to back away from Officer Baker. (*Id.*) at 3, ¶ 17. Mrs. Beck then told her husband that she could

handle the matter, shoved him in the chest, and threw a soda can at him.[2] (*Id.*) at 3, ¶ 18.  Officer Baker viewed Mrs. Beck's demeanor and application of force as domestic violence and sought to detain Mrs. Beck to prevent further violence.  (*Id.*) at 3, ¶¶ 19-20.

Defendants assert that Officer Baker took Mrs. Beck in an escort position and walked her to Officer Chavez's patrol unit.  (*Id.*) at ¶ 21.  They maintain that Officer Baker attempted to stabilize or bend Mrs. Beck over the hood to handcuff her, but Mrs. Beck pushed away from the vehicle and turned toward Officer Baker.  (*Id.*) at ¶¶ 22-23.  Officer Baker perceived this action as aggression toward himself.  (*Id.*) at ¶ 24.  Officer Baker responded with a failed attempt at an arm-bar move, after which he used a leveraged take-down to get Mrs. Beck to the ground.  (*Id.*) at ¶ 25.  Defendants allege that while Mrs. Beck was on the ground, she continued to resist Officer Baker.  (*Id.*) at ¶ 28.

Meanwhile, Mr. Beck observed Mrs. Beck and moved toward her to assist her, disregarding Officer Campa's orders not to approach her.  (*Id.*) at ¶¶ 31-33.  Mr. Beck was ultimately arrested and cited for failing to heed Officer Campa's commands.  (*Id.*) at ¶ 34.

Officers Baker and Chavez eventually succeeded in placing Mrs. Beck in handcuffs and into the back of the police car despite her struggling.  (*Id.*) at ¶ 29.  In the process of putting Mrs. Beck into the patrol unit, Officer Baker had to push her head down to avoid hitting her head against the car frame as she continued to resist.  (*Id.*) at ¶ 30.

B. *Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  When

---

[2] In her deposition, Mrs. Beck admitted that she was upset with her husband because she did not want to go inside and did not want Mr. Beck involved with the incident. (Doc. 76) Ex. D at 50:19-24; 51:17-21.

applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics*, 912 F.2d at 1241. The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted).

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). However, unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Id*. At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id.* The Court may decide in its discretion which of the two parts of the qualified immunity test to address first. *Id.* at 412.

"In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Nevertheless, the plaintiff "is not required to show that the very conduct in question has previously been held unlawful." *Sh. A. ex rel. J. A. v. Tucumcari Mun. Schools*, 321 F.3d 1285, 1287 (10th Cir. 2003). A court should inquire "whether the law put officials on fair

6

notice that the described conduct was unconstitutional" rather than engage in "a scavenger hunt for prior cases with precisely the same facts." *Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir. 2004).

Once the Court concludes that a right was "clearly established," then it becomes the "defendant's burden to prove that her conduct was nonetheless objectively reasonable." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) (citation omitted). "[T]he court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Whether a defendant's conduct is objectively reasonable is a legal question, but a factual question may arise when there is a dispute regarding the historical facts material to the objectively reasonable issue. *Roska*, 328 F.3d at 1251.

When a plaintiff fails to satisfy either portion of the two-pronged test, the Tenth Circuit Court of Appeals has instructed that the defendant must be granted qualified immunity. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (citations omitted). However, "[i]f the plaintiff indeed demonstrates that the official violated a clearly established constitutional or statutory right, then the burden shifts back to the defendant" to show that "no genuine issues of material fact" exist and that the defendant "is entitled to judgment as a matter of law." *Id.* Accordingly, the standard summary judgment burden remains on the defendant to show that "no material facts remain in dispute that would defeat the qualified immunity defense." *Id.*

C. Discussion

   1. *Section 1983 Excessive Force Claim*

   a. *Law of Excessive Force*

"Excessive force claims are governed by the Fourth Amendment's objective reasonableness standard." *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012) (quotation omitted). "Under this standard, the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (quotations omitted). The determination whether actions are objectively reasonable turns on "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to flee." *Lord v. Hall*, 520 F. App'x 687, 692 (10th Cir. 2013) (unpublished) (citing *Graham v. Conner*, 490 U.S. 386, 396 (1989)) (granting qualified immunity to police when plaintiff was injured while resisting arrest as officers were investigating aggravated robbery, where plaintiff was verbally and physically uncooperative, and tried to reenter truck).

Excessive force claims "are generally fact questions for the jury." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1288 (10th Cir. 2008) (citing *Quezada v. Cty. of Bernalillo*, 944 F.2d 710, 715 (10th Cir. 1991) ("[W]hether the police used excessive force in a § 1983 case has always been seen as a factual inquiry best answered by the fact finder.") (collecting cases), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). That is, a jury typically decides a "mixed factual-legal inquiry . . . whether the force used was reasonable." *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1254 (10th Cir. 2013) (citation omitted).

When an officer asserts a qualified immunity defense, the court addresses "the legal inquiry whether the officer's actions were objectively reasonable in light of clearly established law." *Id.* (citation omitted). This analysis is heavily fact dependent. *Olsen*, 312 F.3d at 1314

(quoting *Romero v. Bd. of Cty. Comm'rs*, 60 F.3d 702, 705 n.5 (10th Cir. 1995) (case involving deadly force)). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The Tenth Circuit "will not approve summary judgment in excessive force cases—based on qualified immunity or otherwise—if the moving party has not quieted all disputed issues of material fact." *Olsen*, 312 F.3d at 1314 (citing *Allen v. Muskogee*, 119 F.3d 837, 840-42 (10th Cir. 1997) (denying summary judgment where material dispute of fact remained as to officers' actions prior to shooting and killing man who refused to drop his gun while threatening suicide)); *see also Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1253-54 (10th Cir. 2013) ("Only where there are no disputed questions of historical fact does the court make the excessive force determination on its own, such as on summary judgment."). Specifically, the Tenth Circuit has held that "such material factual disputes involving the 'immediate connect[ion]' of an officer's use of force in response to 'a suspect's threat of force' prevent a court from granting summary judgment." *Id.* at 1315 (quoting *Muskogee*, 119 F.3d at 840).

    b. *Parties' Arguments*

Defendants argue that Officer Baker is entitled to qualified immunity as to the excessive force claim because Officer Baker's actions were objectively reasonable based on the three *Graham* factors. 490 U.S. at 396. Defendants contend that the Court should adopt their version of what happened when Officer Baker placed Mrs. Beck into the vehicle because "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380

(2007). Defendants argue that the Court should also follow the rule stated in *Scott* with regard to whether Mrs. Beck committed a battery on Mr. Beck. (Doc. 80) at 2. Specifically, Defendants posit that Mrs. Beck's concession that she was "upset" with Mr. Beck blatantly contradicts the assertion that Mrs. Beck touched her husband in a loving manner. (*Id.*) Defendants assert that an objectively reasonable officer could have perceived domestic violence and had probable cause to make an arrest. (*Id.*)

Plaintiffs contend that the existence of genuine disputes of material facts require a jury to address the excessive force claim.

    *c. Analysis*

Viewing the record in a light favorable to Plaintiffs, the Court agrees that material disputes of fact exist as to the nexus between Mrs. Beck's behavior and Officer Baker's use of force. *See Olsen*, 312 F.3d at 1315. The parties disagree as to Mrs. Beck's demeanor, proximity to Officer Baker, whether Mrs. Beck committed an act of domestic violence on Mr. Beck, whether Mrs. Beck resisted arrest, whether Mrs. Beck kicked Officer Chavez, and whether Officer Baker shoved Mrs. Beck's head against a patrol unit while placing her inside. Given these factual discrepancies, the Court is unable to determine whether Officer Baker's actions were objectively reasonable under the circumstances. *See Cavanaugh*, 718 F.3d at 1254. Instead, a jury must decide the facts that occurred in this case. In such a situation, the Court may not grant qualified immunity. *See Olsen*, 312 F.3d at 1312.

Defendants' argument that the Court should adopt Defendants' version of certain facts is unpersuasive. Indeed, the Tenth Circuit has declined to extend *Scott v. Harris*, which involved videotape evidence that completely discredited the plaintiff's version of the facts, to situations where only other witnesses' testimony contradicts a plaintiff's version of the facts. *Rhoads v.*

10

*Miller*, 352 F. App'x 289, 291-92 (10th Cir. 2009) (unpublished). To "blatantly contradict" a plaintiff's version of the facts is "very difficult" to accomplish *Cordero v. Froats*, 613 F. App'x 768, 769 (10th Cir. 2015) (unpublished). In the present case, the disputed versions of what happened to Mrs. Beck's head as she was placed in the patrol unit and whether Mrs. Beck shoved Mr. Beck or touched him in a loving manner are supported solely by conflicting witness accounts. Accordingly, the Court cannot adopt Defendants' version of the facts. The Court will deny qualified immunity as to the Section 1983 excessive force claim against Officer Baker.

2. *Section 1983 Unreasonable Seizure Claims*

   a. *Law of Unreasonable Seizure*

"A police officer violates an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer makes a warrantless arrest without probable cause." *Olsen*, 312 F.3d at 1312 (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (quotation and citations omitted). "When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff." *Id.* However,

> [w]hen there are unresolved disputes of historical fact relevant to whether the officer had probable cause and to what information he possessed—and thus to whether he may properly claim qualified immunity, a court may not grant summary judgment based on qualified immunity because the officer would not have shown that no genuine dispute exists as to material fact.

*Olsen*, 312 F.3d at 1312-13.

   b. *Parties' Arguments*

Defendants argue that Officer Baker had probable cause to arrest Mrs. Beck for shoving Mr. Beck in an act of domestic violence[3] and for kicking Officer Chavez, a felony offense. (Doc. 76) at 17. Further, Defendants maintain that Officer Campa had probable cause to arrest Mr. Beck based on his failure to comply with commands not to approach Officer Baker and Mrs. Beck, a misdemeanor. (*Id.*) at 17-18. Alternatively, Defendants contend in their reply that the Tenth Circuit permits a third-party detention, like that of Mr. Beck, for the purpose of officer safety. (Doc. 80) at 3 (citing *United States v. Maddox*, 388 F.3d 1356, 1367 (10th Cir. 2004) ("[T]he protective detention must be for officer safety purposes only, based upon reasonable and articulable suspicion of potential danger to the arresting officers."); *United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir. 1993) ("A law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists.").

Plaintiffs contest probable cause to arrest Mrs. Beck on the basis that she did not shove her husband or kick the officer and that Mr. Beck did not fail to comply with officer instructions. Plaintiffs' assert that these disputes of material fact preclude summary judgment.

c. *Analysis*

As with the excessive force claim, the Court finds that material disputes of fact regarding probable cause to arrest prevent a finding of qualified immunity for either Officer Baker or Officer Campa. The grounds for probable cause described by Defendants are all contested. Further, as Defendants only present conflicting witness testimony against Plaintiffs' case, they fail to "blatantly contradict" Plaintiffs' version of the incident. *See Scott*, 550 U.S. at 380.

---

[3] Defendants contend that the fact that Officer Baker did not charge Mrs. Beck with domestic violence does not mean that probable cause did not exist. (Doc. 76) at 17 (citing *Devenpeck v. Alford*, 543 U.S. 146 (2004)).

12

With regard to Defendants' argument that Officer Campa properly detained Mr. Beck for officer safety, the Court finds the cases cited by Defendants to be distinguishable from the present case. In *Merkley*, officers approached defendant and passengers for a *Terry* stop, during which the officers handcuffed all of the persons in the vehicle for less than two minutes, to assess whether the defendant threatened to kill someone and was acting violently. 988 F.2d at 1063-64. Officers then placed defendant under arrest for carrying a concealed weapon and for cocaine possession. *Id.* at 1063. In *Maddox*, the court found permissible a "temporary, protective detention" of a third-party where officers had reasonable and articulable suspicion of potential danger to themselves. 388 F.3d at 1367-68. The court noted that "the protective detention should last no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.* at 1367-68. In contrast to *Merkley* and *Maddox*, the present case did not involve a temporary, protective detention, as Mr. Beck was arrested and charged with a crime. Therefore, the officer safety justification for detaining Mr. Beck is without merit.

Accordingly, the Court will deny qualified immunity as to the Section 1983 unreasonable seizure claims against Officers Baker and Campa.

3. *Section 1983 First Amendment Retaliation Claim*

Defendants argue that Officer Baker is entitled to qualified immunity on the First Amendment retaliation claim because the United States Supreme Court "has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause." (Doc. 76) at 18 (quotation omitted). Defendants base this argument on the premise that probable cause existed for Mrs. Beck's arrest. However, as discussed previously, and as argued again in Plaintiffs' response, there are genuine issues of material fact regarding the events leading to Mrs.

Beck's arrest. Therefore, the Court cannot grant qualified immunity on the First Amendment retaliation claim on the basis of the probable cause argument.

In their reply Defendants briefly argue that Mrs. Beck has failed to show that Officer Baker's actions toward her were in retaliation for the content of her speech, as opposed to her actions. (Doc. 80) at 3-4. Plaintiffs did not request a surreply on this new argument. Nonetheless, this new argument does not impact the Court's ruling. *See Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1195 (10th Cir. 2006). The many disputed material facts preclude summary judgment on the First Amendment retaliation claim.

4. *State Tort Claims for False Imprisonment and Battery*

"The tort of false imprisonment occurs when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so." *Santillo v. N.M. Dep't of Pub. Safety*, 2007-NMCA-159, ¶ 12, 173 P.3d 6 (citation omitted). "An officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest." *Id.* (citation omitted); *see also Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1208 (10th Cir. 2006) ("Given the well[-]established jurisprudence that a good faith defense to false imprisonment and false arrest ordinarily requires a showing of probable cause, it was error to award the officers summary judgment under the facts of this case.").

In New Mexico, the tort of battery occurs when "(a) [the tortfeasor] acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results." *New Mexico v. Ortega*, 1992-NMCA-003, ¶ 12, 827 P.2d 152 (citation omitted). "An officer can be held liable for assault and battery if he uses excessive

14

force," *Pena v. Greffet*, 108 F. Supp. 3d 1030, 1048 (D.N.M. 2015), as officers may "use only that force which is [objectively] necessary to restrain the arrested person." *State v. Kraul*, 1977-NMCA-032, ¶ 27, 563 P.2d 108.

Defendants present the same arguments with regard to the state tort of false imprisonment as they do for the Section 1983 unreasonable seizure claim, and incorporate their Section 1983 excessive force arguments to contend that Officer Baker is entitled to summary judgment on the battery claim. (Doc.76) at 14-15. Likewise, Plaintiffs reiterate that the existence of disputed material facts related to probable cause preclude summary judgment. (Doc. 78) at 12. Utilizing the Court's previous analysis regarding Plaintiffs' Section 1983 unreasonable seizure and excessive force claims, the Court will also deny summary judgment on the false imprisonment and battery claims. The jury, rather than the Court, must resolve the disputes of fact about the actions and demeanors of Plaintiffs during the incident at issue.

5. *State Tort Claim for Negligent Infliction of Emotional Distress*

This claim deals with A.B. witnessing the incident and his mother's injury. (Doc. 1) at 9-10. Plaintiffs allege that A.B. was near his mother when Officer Baker allegedly used excessive force against her, and as a result, A.B. suffered shock, fear, and emotional distress. (*Id.*)

Defendants argue that Officer Baker has governmental immunity for this claim under the New Mexico Tort Claims Act, NMSA 1978, § 41-4-4(A) (Cum. Supp. 2013), because NMSA, 1978 § 41-4-12 (Repl. Pamp. 1996), does not contain a negligent infliction of emotional distress exclusion from statutory immunity. They also maintain that Officer Baker was acting within the scope of his duties as a law enforcement officer.

Plaintiffs counter that while a claim of negligent infliction of emotional distress is not excluded from immunity, damages may be recoverable as personal injury damages. (Doc. 78) at

14 (citing *Romero v. Otero*, 678 F. Supp. 1535, 1540 (D.N.M. 1987)).

The New Mexico Supreme Court has held,

> Section 41-4-12 does not . . . provide for a separate cause of action for the tort of negligent infliction of emotional distress in the list of enumerated common-law torts for which immunity is waived. Therefore, a plaintiff may not maintain a separate bystander claim for negligent infliction of emotional distress under Section 41-4-12.

*Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶ 25, 916 P.2d 1313, 1320. "[A]lthough . . . parents [or a child] cannot bring a claim for bystander recovery based on negligent infliction of emotional distress, they may bring a direct claim for personal injury, including emotional distress, arising from a violation of a *statutory* right." *Id.* at 1320, 1323 (emphasis added) (parents of rape victim could bring emotional distress claim for violation of statutory duties to prepare and forward paperwork necessary to file criminal complaint, bring a criminal defendant before courts, and assist prosecutors in bringing indictment).

Here, Plaintiffs have not alleged that Defendants violated a statutory right—as opposed to an enumerated common-law tort—through which they may bring a claim for emotional distress on behalf of A.B. Therefore, the Court will grant summary judgment in favor of Defendants as to the negligent infliction of emotional distress claim and dismiss A.B.'s claims from the case with prejudice.

IT IS ORDERED that

1) Defendants' Motion for Summary Judgment (Doc. 74) is granted, in part, and denied, in part;

2) Defendant Officer Baker is not entitled to qualified immunity on Plaintiffs' Section 1983 excessive force and unreasonable seizure claims, and the Court denies summary judgment as to those claims;

3) Defendant Officer Campa is not entitled to qualified immunity on Plaintiffs' Section 1983 unreasonable seizure claim, and the Court denies summary judgment on this claim;

4) Defendant Officer Baker is not entitled to qualified immunity on Plaintiffs' First Amendment retaliation claim, and the Court denies summary judgment as to that claim;

5) the Court denies summary judgment as to Plaintiffs' state battery and false imprisonment claims against Officer Baker;

6) the Court grants summary judgment in favor of Officer Baker as to Plaintiffs' negligent infliction of emotional distress claim against Officer Baker; and

7) A.B.'s claims are dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE